UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| MELISSA CHURCH, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 14-cv-00414-WGY |
| CAROLYN W. COLVIN, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

WILLIAM G. YOUNG, U.S. District Judge[1]                    July 15, 2016

**MEMORANDUM & ORDER**

**I.    INTRODUCTION**

The Plaintiff Melissa Church ("Church") brings this action against Carolyn W. Colvin, the Commissioner of the Social Security Administration (the "Commissioner"), seeking reversal or remand of the Commissioner's denial of Church's applications for disability benefits and supplementary security income (collectively, "benefits").  Compl. 1, ECF No. 1.  Church alleges that the Administrative Law Judge (the "hearing

---

[1] Of the District of Massachusetts, sitting by designation. See Reassignment Order, May 5, 2015, ECF No. 14.

officer")[2] erred in discrediting the opinion of her treating physician, assessing Church's credibility, and determining Church's residual functional capacity ("RFC"). Pl.'s Br. Pursuant General Order No. 18 ("Pl.'s Mem.") 7, 14, 20, ECF No. 12. The Court agrees with Church in part: to the extent that the hearing officer disbelieved Church because of her apparent failure to lose weight -- and the hearing officer's decision indicates that this was a significant consideration in her credibility assessment -- there was legal error, and a remand is required properly to determine Church's RFC.

A.  Procedural Posture

On April 29, 2011, Church filed for benefits, and her applications were denied on July 11, 2011. Certification Admin. R. ("Admin. R.") 55, 62, ECF No. 11.[3] Church requested a hearing before a hearing officer on August 5, 2011. Id. at 77-78. The hearing officer held a hearing by videoconference on October 18, 2012. Id. at 23. On November 8, 2012, the hearing officer issued a written opinion ruling that Church was not disabled. Id. at 28. Church then requested that the Appeals Council

---

[2] For an explanation of the Court's use of the term "hearing officer," see Vega v. Colvin, No. CV 14-13900-WGY, 2016 WL 865221, at *1 n.1 (D. Mass. Mar. 2, 2016).

[3] The administrative record in this case spans several ECF filings, but since the record is consecutively paginated throughout, the Court will refer only to this latter pagination in its citations.

review the hearing officer's decision, but this request was denied on March 26, 2014.  Id. at 1, 6-7.

On April 14, 2014, Church filed her complaint against the Commissioner in the U.S. District Court for the Northern District of New York.  Compl. 1.  Both parties have fully briefed the issues.  Def.'s Answer, ECF No. 9; Pl.'s Mem.; Def.'s Mem. Supp. Mot. J. Pleadings ("Def.'s Mem."), ECF No. 13.  The case was reassigned to this Court on May 5, 2015.  Reassignment Order, ECF No. 14.

### B. Factual Background

The Court incorporates the factual findings of the hearing officer, see Admin. R. 15-23, except to the extent certain findings are challenged by Church.  These findings will be discussed in the Court's analysis of Church's three claims of legal error.

## II. ANALYSIS

Church raises three challenges to the hearing officer's decision.  First, she claims that the hearing officer erred in determining the appropriate weight to give the opinions of various medical sources.  See Pl.'s Mem. 7-14.  Next, she asserts error in the hearing officer's assessment of her credibility.  See id. at 14-20.  Finally, Church claims that the hearing officer's finding that Church can "sustain activity" is

not supported by substantial evidence, id. at 20-22. These will be discussed in turn.

### A. Church's Medical Sources

Church's claim of error regarding the hearing officer's weighing of medical sources has three components. First, she claims that Dr. Erik Hiester's opinion should have been afforded "[c]ontrolling, or at least [s]ignificant, [w]eight." Pl.'s Mem. 8. Second, Church contends that Dr. Sandra Boehlert's consultative opinion should not have received "significant weight." Id. at 11. Third, Church argues that the hearing officer "improperly assess[ed]" Dr. John T. Walters's opinion. Id. at 14. The Commissioner disputes all three points. See Def.'s Mem. 6-12.

#### 1. Dr. Hiester's Opinion

The hearing officer gave "reduced weight to [treating physician] Dr. Hiester's medical source statement because [it is] not consistent with the overall medical evidence and appear[s] to be based on the self-reports of [Church.]" Admin. R. 20. The hearing officer stated that "Dr. Hiester's treatment notes include a benign lumbar spine MRI as well as minimal significant clinical findings during physical examinations other than occasional tenderness to palpation." Id. at 21. The hearing officer also noted that the medical source statement was "a standard 'check a box' or 'fill in a blank' form" with

"minimal (or no) commentary and no supporting attachments[,]" and this fact rendered the statement less persuasive. Id. at 21. Finally, the hearing officer observed that the statement was "contradicted by the [earlier] treatment records and clinical findings of [Dr. Hiester.]" Id.

Under the treating-physician rule, a hearing officer generally owes "deference to the medical opinion of a claimant's treating physician[.]" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (internal citations omitted). When a treating physician's opinion is "not consistent with other substantial evidence in the record, such as the opinions of other medical experts[,]" however, the hearing officer need not give the treating source opinion controlling weight. Id.

Here, Church points out that there is a lengthy treating relationship with Dr. Hiester, Pl.'s Mem. 8, and argues that Dr. Hiester's "opinions are well supported by the medical evidence of record[,]" id. at 9. In particular, Church points to Dr. Charles R. Campbell's recommendations, Pl.'s Mem. 9 (citing Admin. R. 233, 235, 240, 245), and Dr. Walters's notes from various times he met with her, id. (citing Admin. R. 257, 264, 378, 400), as support for Dr. Hiester's medical source statement.

The records of Dr. Campbell to which Church cites do not help her position. Such records include reports relating to

[5]

Church's condition on each of August 9, 2010, August 10, 2010, and August 11, 2010. See Admin. R. 232-235, 240-41, 245. These notes merely describe Church's condition before her catheterization procedure, and as they relate to her condition before her disability onset date of December 31, 2010, see id. at 12, they are of limited relevance.[4]

Dr. Walters's records also do not help Church. Dr. Walters's note from November 12, 2010 states that Church's "catheterization and stenting" procedure achieved (at least initially) promising results: Church was "[d]oing well[,]" and he would "see her in one year." Id. at 257-58. On January 17, 2011, Church was examined by Dr. Walters after reporting chest pain. Id. at 378-79. Although Dr. Walters indicated that Church reported "random" chest pain that "radiates to [her] left upper arm, [along with] intermittent palpitations/pounding[-]like feeling[,]" id. at 378, the objective findings of the examination were normal, see id. at 379. Dr. Walters

---

[4] In "late July 2010[,]" Church "was referred to Dr. Walters for evaluation of exertional chest pain and dyspnea[.]" Admin. R. 233. Dr. Campell's examination of her on August 9, 2010, did include a recommendation that Church "stop work until [her heart] catheterization can be performed[.]" Id. at 233. This catheterization was performed the next day, August 10, and Dr. Campbell noted Church's "moderately severe stenosis," which led to his recommendation of [a]ggressive risk factor management." Id. at 244-45. Her "[d]ischarge summary" of August 11, 2010, noted the "[c]atherization" was successful on August 10, 2010, id. at 240, and that Church has "coronary atherosclerosis," id.

recommended "a Lexiscan scan[,]" and stated that if that scan should turn up negative, then Church ought "continue with [her] present therapy." Id. Finally, Dr. Walters's notes from his October 3, 2011, examination indicate unexceptional objective findings, see id. at 400-01, and explicitly state that Church "is not having angina[,]" instead blaming her weight and "smoking with known coronary disease" for her subjective reported symptoms, id. at 400. Church thus fails to undermine the hearing officer's decision to discount Dr. Hiester's opinion.[5]

### 2. Dr. Boehlert's Opinion

Church next claims that the hearing officer erred in according "significant weight" to the opinion of consulting physician Dr. Boehlert. See Pl.'s Mem. 11-14. The Commissioner, in contrast, claims that the hearing officer was entitled to do so, because "[Dr. Boehlert's] opinion was consistent with her examination findings as well as the longitudinal medical evidence in the record." Def.'s Mem. 9.

---

[5] Church also takes issue with the hearing officer's apparent discounting of Dr. Hiester's opinion based on the check-box nature of the form Dr. Hiester filled out, Pl.'s Mem. 10-11. In light of the other substantial evidence supporting the hearing officer's discounting, however, any error was harmless. See, e.g., Schlichting v. Astrue, 11 F.Supp.3d 190, 207 (N.D.N.Y. 2012) (applying harmless error analysis).

Church raises two particular objections to the hearing officer's reliance on Dr. Boehlert's opinion: she did not review Church's medical records, Pl.'s Mem. 12 (citing Admin. R. 344), and her opinion is inconsistent with her own examination notes, id. at 12-14. The Commissioner does not respond to these points directly, but rather asserts that affirmance is appropriate because of the objective clinical evidence supporting Dr. Boehlert's opinion. See Def.'s Mem. 9-10.

As to Church's first point, the report to which Church herself cites -- Dr. Boehlert's June 28, 2011 "Internal Medicine Examination" -- in fact explicitly refers to Church's medical history. See Admin. R. 344 (referencing specific past evaluations and diagnoses in August 2010, December 2010, and January 2011). Thus, this argument is without merit.

As to Church's second objection, Church first claims that Dr. Boehlert's diagnosis of carpal tunnel is inconsistent with his finding that Church had "only" a "mild limitation" in "fine motor activity[.]" Pl.'s Mem. 12. While Church is correct that the report does reference carpal tunnel syndrome, in context the statement is part of Church's medical history, as recounted to Dr. Boehlert by Church.[6] In light of Dr. Boehlert's physical

---

[6] This portion of Dr. Boehlert's report states: "[Church] has carpal tunnel syndrome for the last two months. It is severe. She uses a brace all the time. It does help somewhat.

examination, which found Church's "[h]and and finger dexterity intact" and "[g]rip strength 5/5 bilaterally[,]" Admin. R. 347, there is no inconsistency between his diagnosis and his proffered functional limitations on Church's "fine motor activity."

Next, Church points to the lack of "postural limitations" as inconsistent with Dr. Boehlert's finding that Church "can only squat halfway down" and that Church's "musculoskeletal exam showed lateral flexion limited to 20 degrees bilaterally and rotary movement limited to 20 degrees bilaterally." Pl.'s Mem. 13. Church also claims an inconsistency between Dr. Boehlert's findings of a "positive Patrick sign, suggesting hip joint disorder[,]" and that Church "experienced pain with range of motion exercises of the hips in the sitting position," on the one hand, and the lack of proffered "sitting-related limitations" on the other. Id. Church ignores, however, the many findings in Dr. Boehlert's report that support the lack of limitations -- namely that Church "[n]eeded no help changing for [the] exam or getting on and off [the] exam table[]" was "[a]ble to rise from [a] chair without difficulty[;]" her "[c]ervical spine shows full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally" and "[l]umbar

---

She was told she cannot have surgery until her cardiac status is more stable for a longer duration." Admin. R. 344.

[9]

spine shows full flexion, [and] extension[;]" and she had "[f]ull [range of motion] of hips, knees, and ankles bilaterally" with "stable and nontender" joints[.]" Admin. R. 345-46. Thus, there is no internal inconsistency in Dr. Boehlert's report that would require reversal.

### 3. Dr. Walters's Opinion

With respect to the hearing officer's assessment of medical sources, Church lastly claims that the hearing officer erred in his assessment of Dr. Walters's opinion. Pl.'s Mem. 14. Church challenges the hearing officer's interpretation of Dr. Walters's statement that Church "would not be able to do a treadmill[,]" Admin. R. 228, asserting that in fact this statement "is a reflection of [Church's] significant functional limitations." Pl.'s Mem. 14. This argument attempts to stretch this statement far too broadly, and ignores the rest of Dr. Walters's reports, which, as discussed supra, support the hearing officer's decision.

### B. Evaluation of Church's Credibility

Church next challenges the hearing officer's evaluation of her credibility. See Pl.'s Mem. 14-20. The hearing officer, in determining Church's residual functional capacity ("RFC"), found that Church's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, statements [made by Church and third parties] concerning the

intensity, persistence, and limiting effects of these symptoms are not fully credible." Admin. R. 19.

When making credibility determinations, if a hearing officer determines that, like in the instant case, a claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," she must consider

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7P, 1996 WL 374186 at *3 (S.S.A. July 2, 1996); see, e.g., Kessler v. Colvin, 48 F.Supp.3d 578, 594 (S.D.N.Y. 2014) (quoting SSR 96-7P). A hearing officer "who finds that a claimant is not credible must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the [hearing officer]'s disbelief and whether his determination is supported by substantial evidence." Henningsen v. Comm'r of Soc. Sec.

Admin., 111 F.Supp.3d 250, 268 (E.D.N.Y. 2015) (internal quotation marks and citations omitted).

Church raises two substantial issues. The first is the hearing officer's inference that her symptoms were not as serious as she alleged because of her doctor's conservative treatment strategy, see Pl.'s Mem. 14, 17-18, and the second is that the hearing officer impermissibly used Church's failure to lose weight as a mark against her credibility, see id. at 19-20.[7] The Court discusses these in turn.

### 1. Conservative Treatment

---

[7] Church also argues that "Dr. Walters['s] refusal to provide a medical opinion says nothing whatsoever about Plaintiff's limitations[.]" Pl.'s Mem. 14. In context, however, this statement, made after explaining the hearing officer's interpretation of Dr. Walters's prior treatment note, was merely noting the absence of evidence to support Church's claimed impairments, not holding the absence against her, see Admin. R. 19.

The hearing officer noted that, although Church "testified . . . that she needs to move around constantly, . . . she sat for the entire hearing and with no obvious problem. Additionally, [Church] testified that she drives and spends a lot of time sitting and watching television; she also pointed out that sitting is 'not bad,' indicating that she is capable of the sitting required in sedentary work." Admin. R. 19-20. Objecting to this observation, Church claims that this was improper, especially given the video-conference setup. See Pl.'s Mem. 16 (collecting cases). The videoconference setup was appropriate to the hearing officer's observations here, however, because they related only to Church sitting and not, for example, her "demeanor." Compare Jopson v. Astrue, 517 F.Supp.2d 689, 706 (D. Del. 2007) (reversing where credibility assessment based on demeanor was made via videoconference), with, e.g., Weather v. Astrue, 32 F.Supp.3d 363, 374 n.2, 381 (N.D.N.Y. 2012) (affirming credibility determination made via videoconference).

Church argues that the hearing officer improperly used Church's conservative treatment as evidence against her. See Pl.'s Mem. 14, 17-18. The hearing officer here noted that Church's "treatment for musculoskeletal problems has been quite conservative," and that she had "declined injections and surgery[.]" Admin. R. 19. Church takes issue with this consideration. See Pl.'s Mem. 15 (calling inference from Church's declining more aggressive treatment "dumbfounding").

Hearing officers cannot discount "the opinion of the treating physician . . . merely because he has recommended a conservative treatment regimen." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008) (internal citation omitted). "The fact that a patient takes only over-the-counter medicine to alleviate her pain may, however, help to support the Commissioner's conclusion that the claimant is not disabled <u>if that fact is accompanied by other substantial evidence in the record</u>, such as the opinions of other examining physicians and a negative MRI." Id. at 129 (emphasis supplied) (citations omitted); see also, e.g., Mayor v. Colvin, No. 15 CIV. 0344 (AJP), 2015 WL 9166119, at *21 (S.D.N.Y. Dec. 17, 2015) ("Courts in this Circuit routinely uphold credibility determinations in which the [hearing officer] finds a claimant's statements about their symptoms not credible based, inter alia, on a conservative treatment record.") (collecting cases). Here, as described

[13]

supra, the findings of Dr. Boehlert constituted substantial evidence to support the finding that Church's symptoms were not as disabling as claimed, and thus Church's challenge, at least as to this particular argument, must fail. See Kessler v. Colvin, 48 F.Supp.3d 578, 595 (S.D.N.Y. 2014) (internal citation omitted) ("[S]o long as the credibility determination is supported by substantial evidence, this Court may not disrupt the [hearing officer's] findings.").

### 2. Failure to Lose Weight

Church's second claim of improper discrediting is based on the hearing officer's reliance on Church's failure to lose weight. Specifically, Church claims that this reliance would be appropriate only upon a finding that Church was in fact disabled, and upon identifying a particular treatment chosen by her doctor with which she failed to comply. See Pl.'s Mem. 19-20 (citing SSR 02-1p). The Commissioner does not directly answer this argument, other than asserting that, to the extent Church argues that her impairments impede her ability to lose weight, such arguments are "mere speculation on [Church's] part and . . . ignore[] established principles" regarding weight loss. Def.'s Mem. 13.

The Social Security Administration promulgated a ruling in 2002 instructing hearing officers on how properly to consider a claimant's obesity in their disability determinations. See

generally SSR 02-1P, 2002 WL 34686281 (S.S.A. Sept. 12, 2002). The ruling instructs that obesity should be considered in the RFC determination, see SSR 02-1P, 2002 WL 34686281, at *6; and, relevant for the instant case, commands that "[b]efore failure to follow prescribed treatment for obesity can become an issue in a case, [a hearing officer] must first find that the individual is disabled because of obesity or a combination of obesity and another impairment(s)." Id. at *9. Hearing officers should "rarely use 'failure to follow prescribed treatment' for obesity to deny . . . benefits." Id. To use a claimant's failure to follow treatment to deny benefits, a hearing officer must find (1) the claimant "has an impairment(s) that meets the definition of disability, including the duration requirement," (2) that "[a] treating source has prescribed treatment that is clearly expected to restore the ability to engage in substantial gainful activity," and (3) that "[t]he evidence shows that the [claimant] has failed to follow prescribed treatment without a good reason." Id.

Here, the hearing officer found that Church's obesity was a severe impairment. See Admin. R. 15. Church has been unable consistently to lose weight. See id. at 19. Church's failure to lose weight apparently figured prominently into the hearing officer's RFC determination; indeed, it occupies an entire paragraph in the credibility-analysis section of the RFC

determination, which includes strong language: Church's "treatment notes are replete with references to her failure to follow medical advice to quit smoking and lose weight[;]" her "'problem is that she smokes and she is grossly overweight . . . she is now trying to diet, but she had gained weight[;]'" "'she is her own worst enemy in the sense of being obese and smoking with known coronary disease at a young age[.]'" Id. at 19. The hearing officer also points to Dr. Walters's statement that Church should lose weight, id., but "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment," SSR 02-1P, 2002 WL 34686281, at *9.

Allowing a hearing officer to discount a claimant's testimony on the basis of her failure to lose weight, without making the findings that Social Security Ruling 02-1p requires, is improper. See Orn v. Astrue, 495 F.3d 625, 637 (9th Cir. 2007) ("At the time in question [the claimant] had not been found disabled, so Social Security Ruling 02–1p precludes the [hearing officer] from considering the effect of any failure to follow treatment for obesity.").

Why might the Social Security Administration have promulgated Ruling 02-1P? It helps to ensure that hearing officers are not swayed by bias against obese claimants who have not been able successfully to lose weight. This bias is real,

and pernicious.  See, e.g., Harriet Brown, For Obese People, Prejudice in Plain Sight, N.Y. Times D6 (March 15, 2010) (describing stigma against obese individuals; reporting that a "recent study shows that the higher a patient's body mass, the less respect doctors express for that patient.").  As the ruling itself explains, "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat. . . . In one sense, the cause of obesity is simply that the energy (food) taken in exceeds the energy expended by the individual's body.  However, the influences on intake, the influences on expenditure, the metabolic processes in between, and the overall genetic controls are complex and not well understood."  SSR 02-1P, 2002 WL 34686281, at *2; see also, e.g., Gina Kolata, After 'The Biggest Loser,' Their Bodies Fought to Regain Weight, N.Y. Times A1 (May 2, 2016) (quoting Dr. David Ludwig as stating "for most people, the combination of incessant hunger and slowing metabolism [as a result of successful dieting] is a recipe for weight regain –- explaining why so few individuals can maintain weight loss for more than a few months.").  Here, because the hearing officer appeared to place great significance on this improper consideration, a remand for a redetermination of Church's RFC is required.  Cf., e.g., Henningsen v. Comm'r of Soc. Sec. Admin., 111 F.Supp.3d 250, 269 (E.D.N.Y. 2015)

(remanding where hearing officer committed legal error in credibility determination).[8]

## III. CONCLUSION

For the foregoing reasons, the alternative relief prayed for in Church's complaint, ECF No. 1, is GRANTED and the case is REMANDED for further proceedings consistent with this opinion.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[8] Church also challenges the hearing officer's RFC determination insofar as it did not include a need to rest. See Pl.'s Mem. 21-22. As the RFC determination will need to be made anew, the Court need not currently address this contention.